IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| Ricky TURNER, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civ. No. 10-00707 ACK-BMK |
| DEPARTMENT OF EDUCATION, STATE OF HAWAIʻI, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff Ricky Turner filed a complaint for employment discrimination on November 29, 2010. (ECF No. 1.) Turner's original complaint contained the unredacted name of a minor. Turner therefore filed another version of the complaint with the minor's name redacted on December 10, 2010 ("Redacted Compl."). (ECF No. 1-2.)[2] As will be discussed below, Turner's complaint

---

[1] The facts as recited in this order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[2] The two versions of the complaint are nearly identical, but three paragraphs were moved from one page to another, and there are several documents that were attached to the original version but not to the redacted version. In their memoranda, the parties generally cite the unredacted version of the complaint. But the Court will cite the redacted version where possible in
(continued...)

alleges that he was terminated from his position as a special education teacher on account of his race. The Equal Employment Opportunity Commission dismissed his claim. Turner then filed this action, which Defendants have moved to dismiss as time-barred. (ECF No. 11.)

**A.**     **Turner's Termination**

It appears from Turner's pro se complaint that he was terminated from his position as a special education teacher at Kaʻu High School, on the Island of Hawaiʻi, on August 1, 2007. (Redacted Compl. at 4-6.) Turner had been placed on administrative leave on or around March 24 of that year. (Id. at 7.) Turner's personnel file has been labeled "ineligible for hire," which has prevented him from obtaining any other teaching positions with the Department of Education. (Id. at 4.) Turner claims that five schools expressed interest in hiring him when he first became available, but that he could not secure a position at any of these schools because of his "ineligible" status. (Id.)

The circumstances of Turner's termination are not clear from the complaint. The Court need not resolve this uncertainty to dispose of this motion because Defendants' theory is that Turner's complaint is time-barred. Even so, the Court will

---

[2/] (...continued)
this order. The original complaint is restricted on the ECF system, so it is not available to internet users.

briefly describe what it can of the circumstances.

There was apparently an incident on a school field trip that Turner led. (Id. at 3-5.) A student with a disability, who was not ordinarily one of Turner's students, seems to have wandered off from the group at some point. (Id.) It appears that this incident led to Turner's termination. (Id.)

The student's behavior counselor had asked Turner to take the student along for the trip. (Id. at 3.) Turner alleges that the student had a prior history of "being a liar and a flight risk," but that he was not informed of this history or otherwise made aware of the student's disabilities and needs. (Id.) He alleges that he would not have permitted the student to attend the field trip had he known that she was a flight risk. (Id. at 3-4.)

Turner alleges that at an administrative hearing concerning his termination, he obtained an admission from Defendant Mary Correa, the Complex Area Superintendent for Kaʻu High School, that Turner did not violate the Department of Education's policy concerning field trips and student travel or its policy concerning student safety and welfare. (Id. at 5.)

Yet Turner was "the only one disciplined for th[e] incident." (Id. at 9.) Turner alleges that he was "singled out to take the fall for this incident" because "he was the only black teacher within the school." (Id.)

**B.      EEOC Proceedings**

Turner filed a claim with the EEOC "on or about March 15, 2008." (Redacted Compl. at 7.) In his memorandum in opposition to Defendants' motion to dismiss, Turner claims that the EEOC investigator was initially "very enthusiastic" about Turner's claim. (ECF No. 17 ("Opp'n") at 2.) Turner claims that he contacted the investigator "monthly," although he does not say for how many months he did so. (Id. at 3.) At some point (it is not clear when), the investigator's "demeanor had changed," and he informed Turner "that the investigation is completed and they are not pursuing the matter." (Id.)

At this point in the exposition, the Court must cite certain portions of the unredacted complaint. Several relevant documents were attached to Turner's original complaint but not to the redacted version. One was a right-to-sue letter from the EEOC dated October 29, 2008. (Compl. at 13-14.) As will be discussed below, this letter is central to this motion; Turner claims that he did not receive it, but Defendants claim that he should be presumed to have received it shortly after its issuance date.

The dispute over Turner's receipt of the right-to-sue letter is reflected in two other attachments to the original complaint. The first is a September 17, 2010, letter from Turner to Susan Kitsu, Director of the Department of Education's Civil

Rights Compliance Office (the "Kitsu letter"). (Id. at 12.) In this letter, Turner claimed that he had not received his right-to-sue letter until September 10, 2010, and he demanded an updated copy of his right-to-sue letter reflecting that date. (Id.) The second attachment is a September 20, 2010, letter to Turner from Timothy A. Riera, Director of the Honolulu Local Office of the EEOC (the "Riera letter"). (Id. at 15.) The Riera letter states that the EEOC's records reflect that the right-to-sue-letter was mailed to Turner on October 29, 2008. (Id.) The Riera letter also denies Turner's request for an updated right-to-sue letter. (Id.)

According to Turner, he first obtained a copy of his right-to-sue letter in September 2010 after an attorney asked him if he had ever received a right-to-sue letter and advised him to request a copy. (Opp'n at 3-4.) Turner filed this action on November 29, 2010, within 90 days of the date he claims to have first received his right-to-sue letter but more than two years after the issuance date reflected on the face of that letter.

## II. STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails "to state a claim upon which

-5-

relief can be granted."[3/]  Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).[4/]  Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am.

---

[3/] Defendants state that their motion is made pursuant to Rule "12(b)," without specifying a subparagraph of that Rule. Based on Defendants' argument, the Court construes the motion as arising under Rule 12(b)(6).

[4/] The right-to-sue letter and the Riera letter are attached as exhibits to Defendants' motion to dismiss.  (ECF No. 11 Exs. A–B.)  But they were also attached to Turner's unredacted complaint.  The Court can therefore consider them without converting the motion to dismiss into a motion for summary judgment.

Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim

that is "plausible on its face." Id. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      Special Considerations for Pro Se Litigants**

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987). When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39–40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107–08 (9th Cir. 2000).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the

deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Eldridge, 832 F.2d at 1136. However, the court may deny leave to amend where amendment would be futile. Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); Eldridge, 832 F.2d at 1135-36. Similarly, "when the district court transforms a motion to dismiss into a motion for summary judgment, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings and must afford a reasonable opportunity to present all pertinent material." Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

### III. DISCUSSION

Because there is a dispute about whether Turner received his right-to-sue letter and Defendants have not shown that his receipt of the letter should be presumed, the Court will deny Defendants' motion to dismiss.

**A.      Timely Filing of Civil Action**

Turner claims that he did not receive his right-to-sue letter until September 10, 2010. (Opp'n at 4.) If this is true, then his filing of this action on November 29, 2010, was timely, because the Ninth Circuit "measure[s] the start of the

limitations period from the date on which a right-to-sue notice arrived at the claimant's address of record." Payan v. Aramark Mgmt. Servs. Ltd., 495 F.3d 1119, 1126 (9th Cir. 2007) (citing Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 384 (9th Cir. 1997)). Defendants assert that Turner should be presumed to have received the letter three days after the date it was issued. (ECF No. 11-1 ("Mot. Mem.") at 3–4 (citing Payan, 495 F.3d at 1126).) But this presumption does not apply in this case.

In Payan, the Ninth Circuit adopted a rebuttable presumption concerning the timing of the receipt of a right-to-sue letter from the EEOC. Specifically, where a claimant does not dispute the receipt of a right-to-sue letter, the letter is presumed to have arrived three days after it was issued. See Payan, 495 F.3d at 1126. In this case, Defendants' reliance on the Payan presumption is misplaced because whether Turner received his right-to-sue letter at all is in dispute. The Payan court repeatedly noted that Payan's receipt of the letter was not in dispute—only the actual date of receipt was disputed.[5] In

---

[5] See Payan, 495 F.3d at 1121 ("[T]he fact of receipt itself is undisputed."); id. at 1122 ("Payan does not dispute having received the letter . . . ."); id. ("Where the actual date of receipt is unknown but receipt itself is not disputed, we have not demanded proof of actual receipt but have applied a presumption to approximate receipt.") (emphasis added); id. at 1123 ("[T]he undisputed facts are . . . that Payan received the notice letter . . . ."); id. ("The cases Payan cites to suggest that courts have required additional proof involved claims where the fact of receipt was disputed, not—as here—where the issue is
(continued...)

contrast, Turner claims that he did not receive the right-to-sue letter at all until he requested a copy in 2010. (Opp'n at 4.) Where receipt of a right-to-sue letter is in dispute, the Payan presumption does not apply. See Ukpanah v. Ariz. Bd. of Regents, No. CV-10-0274-PHX-DGC, 2010 WL 4537043, at *1 (D. Ariz. Nov. 3, 2010) (refusing to apply the Payan presumption where the receipt of a right-to-sue letter from the EEOC was in dispute).

Defendants also attempt to employ an alternative presumption to show that Turner received his right-to-sue letter in 2008. Defendants quote Mahon v. Credit Bureau of Placer Cnty., Inc., 171 F.3d 1197, 1202 (9th Cir. 1999), for its description of the common law "mailbox rule." Under that rule, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." Rosenthal v. Walker, 111 U.S. 185, 193 (1884). The pleadings in this case do not establish that the mailbox rule should apply, however, because there has been no showing that the right-to-sue letter

---

⁵/ (...continued)
the timing of receipt."); id. at 1124 n.4 ("[T]he mailbox rule . . . is inapplicable here, where Payan acknowledges she received the right-to-sue letter."). The mailbox rule referenced in footnote 4 of Payan is also inapplicable in this case, as will be discussed below.

was "put into the post-office or delivered to the postman." Id.

In Mahon, the record contained printouts from "computerized collection tracking and filing software" that "record[ed] all collection activities, including which notices are sent to whom and on what date." 171 F.3d at 1199. The "standard business practice established that the . . . Notice was sent to the Mahon's home via first class mail." Id. at 1201. Specifically, the record before the court showed that "[t]he [software] generated the Notice, and then another machine mechanically addressed and stuffed the Notice into an envelope addressed to the Mahons. The Notice was mailed. Before mailing, Credit Bureau employees ensured that the number of outgoing notices corresponded with the number assigned to the daily 'batch' of notices to be sent." Id. at 1201-02.

Mahon demonstrates the difference that a fully developed record can make. In contrast, the record now before the Court is scant. All there is to show that the right-to-sue letter was mailed in October 2008 is the letter itself, which is dated "10/29/08," and the Riera letter.[6]

---

[6] Also attached to Defendants' motion is a declaration from Susan Kitsu, Director of the Department of Education's Civil Rights Compliance Office. Kitsu declared, among other things, that the copy of the right-to-sue letter attached as Exhibit A to Defendants' motion was provided to the department by the EEOC and was kept in the regular course of business.
    The Court cannot consider Kitsu's declaration as evidence supporting a presumption of mailing without converting this
(continued...)

According to the Riera letter, the EEOC's "records reflect that the dismissal and notice of rights was mailed to you on October 29, 2008." But the EEOC's mailing records are not themselves part of the record before the Court. Even assuming that those records would be admissible as business records under Federal Rule of Evidence 803(6), Riera's statement about what the EEOC's records reflect is inadmissible hearsay. Since the Court would not be able to consider the letter under Federal Rule of Civil Procedure 56 if this were a motion for summary judgment, it will not construe it against Turner in the context of a motion to dismiss. Cf. Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181–82 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment. The same rule applies when evidence is submitted . . . in support of a motion to dismiss.") (citations omitted); see also Fed'n of African Am. Contractors,

---

6/ (...continued)
motion to dismiss into a motion for summary judgment. See Ritchie, 342 F.3d at 907. The Court declines to convert the motion, in part because the record as it stands would not support summary judgment even if the Kitsu declaration were considered.
 The Department's receipt of a copy is relevant, in the broad sense of Federal Rule of Evidence 401, to whether Turner received his right-to-sue letter. Yet it is insufficient to give rise to a presumption that he did. To benefit from the mailbox rule, Defendants must show that the EEOC sent the letter to Turner. Kitsu's declaration shows that the Department of Education received a copy of the letter, but it does not show that the EEOC mailed the original to Turner. Additionally, the declaration says nothing about when the department's copy arrived. The timing of the mailing is central to this case.

96 F.3d at 1207.

All that is left is the date on the right-to-sue letter itself. That date, standing alone, is insufficient to give rise to a presumption that the right-to-sue letter was actually mailed or that it arrived at Turner's address of record. Other cases have required more evidence of mailing and receipt. See Nelmida, 112 F.3d at 384 (holding that "the ninety-day period within which to file suit began running when delivery [via certified mail] of the right-to-sue notice was attempted at the address of record"); Scholar v. Pac. Bell, 963 F.2d 264, 267 (9th Cir. 1992) ("Ms. Scholar was given notice when the right-to-sue letter sent certified mail by EEOC was received and signed for by Ms. Scholar's daughter . . . .") (emphasis added); see also Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009) (noting that "Albertson's has not produced any business records or other physical evidence that the EEOC sent the notice of the right to sue," and adding that "Albertson's submitted no affidavits in support of the mailing").

In Duron, the court refused to apply the mailbox rule where "the only evidence of mailing that Albertson's provided was a copy of the EEOC notice of right to sue with '10/4/04' written in the 'Date Mailed' field." 560 F.3d at 291. This case has nearly the same facts as Duron. The only evidence of mailing is a copy of the right-to-sue letter with "10/29/08" written in the

-14-

"Date Mailed" field. There are no business records or other physical evidence of mailing. Unlike Nelmida and Scholar, in this case the EEOC did not send the right-to-sue letter via certified mail.[7/] And Defendants have submitted no affidavits in support of the mailing, in contrast to another case cited in Payan. See Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 964 (9th Cir. 2001) ("We have held [that] a sworn statement is credible evidence of mailing for purposes of the mailbox rule."). The date on the right-to-sue letter, standing alone, is insufficient to support dismissing Turner's action.

**B.      Equitable Tolling**

"The ninety-day period within which to file a civil action after dismissal of the charge by the EEOC is a statute of limitations subject to the doctrine of equitable tolling." Nelmida, 112 F.3d at 384. Both parties addressed equitable tolling, but because of the resolution of this motion, it would be premature for the Court to resolve the issue at this time. For purposes of this motion, the Court assumes that Turner did

---

[7/] Defendants note in their reply that there is no requirement that a right-to-sue letter be sent via certified mail. (ECF No. 19 ("Reply") at 2.) But this is beside the point. Even if there is no requirement, using certified mail can prevent the kind of dispute that has arisen here. See Duron, 560 F.3d at 291 ("[I]f the EEOC had followed its former practice of sending right-to-sue letters by certified mail, this dispute would, in all likelihood, have never arisen."). The use of certified mail has apparently been the EEOC's practice at other times. See Nelmida, 112 F.3d at 384; Scholar, 963 F.2d at 267.

not receive his right-to-sue letter until September 10, 2010. Given that assumption, Turner's complaint was timely when he filed it on November 29, 2010. The Court therefore need not consider whether equitable tolling applies. See Ukpanah, 2010 WL 4537043, at *3 n.4.

Defendants may be able to demonstrate at a later stage that Turner's receipt of the right-to-sue letter should be presumed. If Defendants can make that showing, and Turner cannot rebut it, then whether equitable tolling should apply will be ripe for decision.[8]

## C.    **Appointment of Counsel**

Turner requested appointment of counsel in this case. (ECF No. 3.) On December 13, 2010, Magistrate Judge Kurren found

---

[8] As the Court instructed Turner at the hearing, if Defendants manage to show that Turner's receipt of the letter in 2008 should be presumed, Turner will have to satisfy a high burden to demonstrate that the ninety-day deadline should be equitably tolled. "Equitable tolling is . . . to be applied only sparingly, and courts have been generally unforgiving . . . when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." Nelmida, 112 F.3d at 384 (citations and internal quotation marks omitted).
   Turner's only argument to date is that he did not receive his right-to-sue letter. If this argument falls away, then little basis for equitable tolling appears in the record as it currently stands.
   Turner claims to have spent two years trying to find an attorney after the EEOC investigator informed him verbally that the EEOC would not pursue the matter. (Opp'n at 3.) But if Turner received his right-to-sue letter, he should have timely filed this action, with or without an attorney. Turner's filing of this action in 2010 seems to demonstrate his ability to have filed it in 2008; the record reveals no extraordinary difficulty that Turner had in 2008 but no longer had in 2010.

-16-

and recommended that appointment of counsel should be denied. (ECF No. 5 ("F&R").)  Turner has not filed any objection to the F&R.

The F&R was based in part on Turner's statement in his request for appointment of counsel that he had contacted seven attorneys.  The F&R noted that "greater efforts could be made" to obtain counsel.[9/]  (F&R at 5.)

The F&R also found that Turner had failed to show that his claim had "some merit."  (Id.)  The F&R primarily relied on the same theory that Defendants raise: that the action is time-barred.  As was discussed above, whether the action is time-barred cannot be determined at this point.  Yet Defendants may ultimately be able to prevail on their theory, so the F&R's rationale holds.  The F&R recognized that Defendants would bear the burden of proving their affirmative defense, but nonetheless found that Turner's claim was "insufficiently meritorious to weigh in favor of appointing counsel."  (Id. at 7.)

The Court agrees with the F&R, and also notes that Turner appears able to develop his case and represent himself. "[W]hether an indigent party is capable of presenting his or her own case" is relevant to whether counsel should be appointed, as

---

[9/] In his opposition, Turner claims to have contacted 'over 100 attorneys over a 2 year period." (Opp'n at 3.)  This claim is in stark contrast to Turner's sworn statement in support of his request for appointment of counsel. (ECF No. 4, 7.)  The Court therefore disregards it.

is "whether the party is able adequately to investigate the factual issues in the dispute." McKeever v. Israel, 689 F.2d 1315, 1321 (7th Cir. 1982); see also Johnson v. U.S. Dep't of Treasury, 939 F.2d 820, 825 (9th Cir. 1991) (citing McKeever for its list of factors that should be considered in deciding whether to appoint counsel).[10/]

Turner has made no challenge to the F&R, which accords with the Court's independent evaluation of Turner's request for appointment of counsel. The Court therefore adopts Magistrate Judge Kurren's finding and recommendation that Turner's request for appointment of counsel should be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court (1) DENIES Defendants' Motion to Dismiss; and (2) ADOPTS the magistrate judge's findings and recommendation that Plaintiff's request for appointment of counsel be denied.

---

[10/] McKeever also lists as a relevant factor "whether the only evidence that will be introduced is in the form of conflicting testimony." 689 F.2d at 1320–21. This factor does not appear to apply in this case, which will likely turn, at least initially, on documentary evidence concerning the mailing of Turner's right-to-sue letter rather than conflicting testimony.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, April 28, 2011.



_____
Alan C. Kay
Sr. United States District Judge

Turner v. Department of Education, State of Hawaiʻi, Civ. No. 10-00707 ACK-BMK: Order Denying Defendants' Motion to Dismiss and Adopting the Magistrate Judge's Findings and Recommendation