IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
RICKY TURNER,                    )
                                 )   Civ. No. 10-00707 ACK-BMK
          Plaintiff,             )
                                 )
     v.                          )
                                 )
DEPARTMENT OF EDUCATION STATE OF )
HAWAII; PATRICIA HAMAMOTO        )
SUPERINTENDENT; MARY A. CORREA,  )
COMPLEX AREA SUPERINTENDENT;     )
SHARON BECK, PRINCIPAL KA'U HIGH )
PAHALA ELEMENTARY SCHOOL; CARRI  )
MESTUZZI, BEHAVIOR COUNSELOR,    )
                                 )
          Defendants.            )
_____)
```

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PROCEDURAL HISTORY

On November 29, 2010, Ricky Turner ("Plaintiff"), an African-American, filed a complaint for employment discrimination against the Department of Education, State of Hawaii (the "DOE"), DOE Superintendent Patricia Hamamoto, Complex Area Superintendent Mary A. Correa, Ka'u High and Pahala Elementary School Principal Sharon Beck, and Behavior Counselor Cari Mestuzzi (collectively, "Defendants").[1/]  Doc. No. 1.  The Complaint asserted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

_____

[1/]Plaintiff originally proceeded pro se.  On May 27, 2011, Plaintiff's counsel filed a notice of appearance and continues to represent him.  Doc. No. 27.

et seq. ("Title VII").  Id.  On February 10, 2011, Defendants
filed a Motion to Dismiss Complaint, alleging that Turner's suit
was untimely because he filed his complaint more than 90 days
after receiving a right-to-sue letter from the EEOC, which
Defendants assert was sent to Plaintiff on October 29, 2008.
Doc. No. 11, at 2-3.  Turner opposed the Motion to Dismiss,
asserting that he did not receive the right-to-sue letter until
September 2010.  Doc. No. 17, at 3-4.  On April 28, 2011, the
Court denied the Motion to Dismiss because Plaintiff's receipt of
the letter in 2008 was disputed and Defendants did not establish
that receipt should be presumed.  2011 WL 1637333 (Doc. No. 23).

On July 5, 2011, Plaintiff filed a First Amended
Complaint ("Am. Compl.").[2/]  Doc. No. 34.  On August 31, 2011,
Defendants filed a Motion for Summary Judgment ("Defendants'
Motion").  Doc. No. 44.  The Motion was accompanied by a
supporting memorandum ("Defs.' Mot. Mem."), a concise statement
of facts ("Defs.' CSF"), and several declarations and
exhibits.[3/4/]  Doc. Nos. 44 & 45.  On January 31, 2012, Plaintiff

---

[2/]The Amended Complaint states that Correa, Beck, and
Mestuzzi, are sued in their personal capacities.  Am. Compl.
¶¶ 4-5, 7.  It does not state in what capacity Hamamoto is sued,
but Plaintiff's opposition states that he is suing Hamamoto in
her official capacity.  See id. ¶ 3; Pl.'s Opp'n 12.

[3/]Defendants' Motion included declarations from Susan Kitsu,
the Director of the Civil Rights Compliance Office for the DOE;
Susan La Vine, a Personnel Specialist for the DOE; Travis
Palmeira, a prior Personnel Specialist for the DOE; Timothy A.
Riera, the EEOC Director of the Honolulu Local Office; James

filed a Declaration in Opposition ("Turner Declaration"), a response to Defendants' CSF ("Pl.'s CSF"), and Exhibits A & B.[5/] Doc. Nos. 76-79.  Due to counsel's alleged difficulty in filing exhibits electronically, Plaintiff's opposition ("Pl.'s Opp'n") and Exhibits C-F were filed one day late, on February 1, 2012. Doc. Nos. 80-82, 84; see Doc. No. 86.

Defendants filed a reply to Turner's Declaration on February 1, 2012.  Doc. No. 83.  On February 2, 2012, Defendants filed a supplement to their reply, requesting that the Court disregard Plaintiff's opposition because it was untimely.  Doc. No. 85.  On February 3, 2012, Plaintiff filed a motion requesting that the Court consider his opposition and exhibits filed one day late.  Doc. No. 86.  Plaintiff additionally requested that the Court consider his Exhibit "I," the deposition of Mestuzzi, which was attached to the motion.  Id.  On February 6, 2012, the Court

---

Bertilacci, former Vice-Principal of Ka'u High; and Defendants Hamamoto, Correa, Beck, and Mestuzzi.

[4/]Defendants also filed three errata to their Motion.  The first errata contained a missing page from Defendants' Exhibit E, a copy of a School Code Regulation.  Doc. No. 48.  The second and third errata corrected typographical errors in several of the declarations attached to Defendants' Motion, in which "Mr. Taylor" was erroneously stated instead of "Mr. Turner."  Doc. Nos. 64 & 65.

[5/]The Court previously granted Plaintiff's unopposed request for an extension of time to file his opposition and thus continued the hearing from January 9, 2012, until February 21, 2012.  Doc. No. 70.  Consequently, Plaintiff's opposition was due on January 31, 2012.

3

granted Plaintiff's Motion.  Doc. No. 87.

On February 21, 2012, the Court held a hearing on Defendants' Motion for Summary Judgment.  At the hearing, the Court asked the parties to file supplemental memoranda on the applicability of the statute of limitations to Plaintiff's claims.  On February 23, 2012, Defendants filed a supplemental memorandum ("Defs.' Supp. Mem.").  Doc. No. 89.  On February 24, 2012, Plaintiff filed a supplemental memorandum ("Pl.'s Supp. Mem.").  Doc. No. 90.

## FACTUAL BACKGROUND[6/]

Plaintiff's suit centers around his allegation that he was terminated from his position as a special education teacher at Ka'u High School on the island of Hawaii on account of his race.  The events leading to Plaintiff's termination involve a field trip to Volcano National Park (the "field trip") on Friday, April 20, 2007, and his return to school without an attending student, "K.K."[7/]

---

[6/]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[7/]There appears to be some confusion about the date of the field trip.  In the Amended Complaint, Plaintiff asserts that the "discriminatory conduct" occurred on or about March 24, 2007, Am. Compl. ¶ 17, and in his Declaration, Plaintiff asserts that the field trip occurred on March 17, 2007.  See Turner Declaration ¶ 16.  In their CSFs, the parties agree, however, that the field trip occurred on April 20, 2007.  Pl.'s CSF ¶¶ 1 & 2; Defs.' CSF ¶¶ 1 & 2.  Other statements from depositions and exhibits

## I.    The Field Trip

K.K. began attending Kaʻu High in March 2007.  Pl.'s Opp'n 1.  Before attending Kaʻu, K.K. had been certified as a "504" student, a certification for general education students "that have some type of disability . . . that impairs their being able to access their learning in the classroom."  See Doc. No. 86, at 8:15-21, 11:18-22 (Deposition of Cari Mestuzzi) ("Mestuzzi Deposition").  K.K.'s educational history revealed that she had a history of running away, cutting classes, and disruptive behavior.  Id. at 11:23-12:17.  Due to improvement in her behavior before transferring to Kaʻu, her previous school had recommended decertifying her from the 504 program.  Id. at 10:1-8.  Based on this recommendation, her records, and comments from her guardian, the school apparently decertified K.K. at a meeting on April 12, 2007.[8]

At the meeting, K.K. had expressed interest in going

_____

submitted by the parties are consistent with the April 20 date.

[8]There are inconsistencies in the record as to whether K.K. was decertified at the meeting or the meeting began the decertification process.  Compare Doc. No. 81, at 20-33 (Deposition of James A. Bertilacci), with Doc. No. 82, Ex. H., at 14 (Deposition of Sharon Beck), and Mestuzzi Deposition, at 14:25-15:4.  In his opposition, Plaintiff states that the decertification process for K.K. was never completed.  Pl.'s Opp'n 1.  In his declaration, Plaintiff asserts that "student KK was already decertified before the field trip."  Turner Declaration ¶ 16.  Whether K.K. was decertified or decertification was merely contemplated before the field trip does not affect whether Turner suffered discrimination and thus is inconsequential to the resolution of the instant motion.

into construction.  Id. at 15:4-5; see Defs.' Mot. Ex. D, 4-5.
Consequently, Counselor Mestuzzi asked Plaintiff if K.K. could
attend a construction expo field trip that Plaintiff had planned
for April 17, 2007.  Mestuzzi Deposition, at 15:4-11.  Plaintiff
did not know K.K. and Mestuzzi did not mention K.K.'s behavioral
history or her recent 504 status to Plaintiff.  Pl.'s CSF ¶ 5;
see Pl.'s Opp'n 13.  Because only three students signed up for
the Construction Expo, Plaintiff cancelled the trip.  Defs.' Mot.
Ex. D., at 18.  Plaintiff reported that he took the students to
the Volcano National Park as a related work study field trip, and
he received approval from school administration for the trip.
Defs.' Mot. Ex. D., at 20; Pl.'s Opp'n 5.

     While at the Volcano National Park, K.K. went to the
bathroom and never returned.  Pl.'s Opp'n 18.  Turner and the
other students unsuccessfully looked for K.K. for an hour, ate
lunch, and then returned to school around 1:30 p.m.  Defs.' Mot.
Ex. D, at 6.  Turner did not inform the park rangers, the school
administration, or K.K.'s guardian that she was missing.  Defs.'
Mot. Mem. 14.  Around 8:15 p.m. that night, K.K.'s guardian
called Turner to inquire about K.K. because she had not returned
home.  See Defs.' Mot. Ex. D, at 4.  After the phone call, Turner
called the police to report that K.K. was missing.  Id.

## II.  Turner's Termination

     An investigation into the field trip incident was

initiated by Defendant Correa and the investigation was assigned
to Vice Principal Bertilacci.  Defs.' Mot. Mem. 2-3.  Upon
investigation, Turner admitted that he left the park without K.K.
and did not immediately report her missing.  Defs.' CSF ¶ 2;
Defs.' Mot. Ex. D, at 3.  Turner asserted that he did so because
he believed that K.K. was 18 years old and he wanted to respect
her adult decision.  Defs.' Mot. Ex. D, at 3-4.

On July 18, 2007, Bertilacci completed the
investigation report, which included multiple interview
statements from witnesses and exhibits.  Defs.' Mot. Mem. 3; see
Defs.' Mot. Ex. D.  The allegations against Plaintiff were that
he acted inappropriately and violated Board of Education ("BOE")
Policies by: (1) improperly allowing K.K. to participate in the
field trip; (2) returning from the field trip without K.K.; and
(3) failing to immediately report K.K. missing to school
administration, K.K.'s guardian, or the proper authorities.
Defs.' Mot. Ex. D., at 2.

In his investigation report, Bertilacci concluded that,
more likely than not, Turner's field trip violated BOE Policy
# 2250.  Defs.' Mot. Ex. D, at 8.  Policy # 2250 provides that:
"Field Trips and travel shall be permitted only when the derived
educational benefits are clearly linked to and support ongoing
standards-based classroom studies.  Schools shall be cognizant of
the safety and welfare of all participants on field trips. . . ."

Id. at 14.  The report concluded that evidence existed that indicated the field trip "did not possess derived educational benefits that are clearly linked to and support ongoing standards-based classroom studies."  Id. at 8.  He supported his conclusion with the facts that there was no indication any workplace readiness activities took place during the trip and K.K. stated the reason for the trip was fun, not work experience. Id.  Bertilacci further concluded that there was sufficient evidence to indicate Plaintiff also violated the policy by failing to be cognizant of the safety and welfare of K.K. during the trip.  Id.  Specifically, "Teacher Turner's failure to act at very fundamental levels by informing National Park authorities, the Hawaii Police Department, or the administrators of Ka'u High School placed Student [] in grave danger."  Id.

        Bertilacci further concluded that, more likely than not, Plaintiff violated BOE Policy # 4200.  Id. at 10.  Policy # 4200 provides that: "The [DOE] shall provide a caring environment conducive to the physical, mental, social, and emotional well-being of students while they are participating in school activities.  Attention shall be given to the personal safety of each student during these activities. . . ."  Id. at 16.  Particularly, Plaintiff "assumed responsibility for safety and well being of students under his supervision during the Volcano National Park field trip . . . regardless of their age."

8

Id. at 9.  Bertilacci concluded that Plaintiff violated this provision by returning to school without K.K. and failing to immediately report her missing.  Id.

Finally, the report concluded that it is more probable than not that Plaintiff's conduct "was inappropriate so as to be considered misconduct." Id. at 10.  This conclusion was supported by evidence that "demonstrate[d] that Teacher Turner failed to maintain procedures that foster a safe environment for students." Id.

By letter dated August 21, 2007, Principal Beck informed Plaintiff that after careful consideration of the investigation report and related information, "[b]ased upon the seriousness of your behavior, I am recommending disciplinary action that includes but may not be limited to suspension termination." Defs.' Mot. Ex. E, at 13.  Beck submitted her recommendation to Complex Area Superintendent Correa.

By letter dated November 4, 2007, Correa recommended that Plaintiff be terminated.  Id. at 25.  Correa agreed that Turner's conduct with respect to the field trip violated Policy ## 2250 and 4200, and that he had acted inappropriately as to be construed as misconduct under DOE standards.  Id. at 25-26. Correa stated that Plaintiff's purported justification of his actions – that he thought student was 18 – "has no merit and indicates that you failed to comprehend the seriousness of your

9

action." Id. at 29.  She explained that regardless of age,
teachers have a responsibility to provide for the safety of
students, and nonetheless, if it was another teacher or parent,
she would expect Plaintiff to report the adult missing.  Id.
Correa also addressed Plaintiff's assertion that he did not call
the school because he did not want K.K. to go to a home for
troubled youth.  Id.  She explained that the decision to send a
child to a juvenile facility is not within his scope and duties
as a teacher, and his assumption and ultimate decision not to
report K.K. missing "could have resulted in far more serious
consequences."  Id.

        Correa submitted her recommendation for termination to
Superintendent Hamamoto.  Id.  By letter dated January 4, 2008,
Hamamoto informed Plaintiff that he was terminated from his
position as teacher.  Id. at 31.  Her decision was based on a
review of the relevant documents, as well as a review of the
issues addressed by Plaintiff and his Union representative at a
meeting with Hamamoto on November 21, 2007.  Id.  Hamamoto stated
that "[a]s you have not demonstrated acceptance of your
responsibility, it is appropriate that you be terminated."  Id.

        Plaintiff claims that five schools expressed interest
in hiring him soon after his discharge, but that he was unable to
secure a position because his personnel file had been labeled as
"ineligible for hire."  Id. ¶¶ 28-31.

### III. The Grievance Process

On February 6, 2008, the Hawaii State Teachers Association, on behalf of Plaintiff, filed a grievance challenging his discharge with the DOE. Defs.' Mot. Mem. 4; Defs.' Mot. Ex. F.  After four hearings, by letter dated June 5, 2008, Superintendent's Designated Representative, Susan La Vine, denied the grievance, finding that "termination was for just and proper cause." Defs.' Mot. Ex. F, at 1, 7.

On April 29, 2008, Plaintiff filed a Charge of Discrimination with the EEOC, asserting that he had been subjected to discrimination because of his race. Defs.' Mot. Ex. A, at 2.  He stated that although he was placed on leave with pay pending an investigation into the field trip, "no disciplinary action was taken against the School Principal Sharon Beck (non-Black female) and non-Black I.E.P. team members for their failure to properly evaluate [K.K.] upon her transfer to school." Id. He further asserted that he was discharged without pay prior to having an opportunity to respond to the investigative findings. Id.

The EEOC denied the charges. Defs.' Mot. Ex. 2, at 1. According to Defendants, they sent Plaintiff a "Dismissal and Notice of Rights," also known as a "right-to-sue letter" on October 29, 2008. Defs.' Mot. Mem. 8.  Plaintiff contends that the letter was not mailed via certified mail and there is no

11

proof of its receipt.  See Pl.'s CSF ¶ 7.  On November 29, 2010, Plaintiff filed the instant action.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Summary judgment is therefore appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so in either of two ways: by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.
Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[9]  Conversely,
where the evidence could not lead a rational trier of fact to
find for the nonmoving party, no genuine issue exists for trial.
See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391
U.S. 253, 289 (1968)).

    The moving party has the burden of persuading the court
as to the absence of a genuine issue of material fact.  Celotex,
477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987
(9th Cir. 2006).  The moving party may do so with affirmative
evidence or by "'showing'—that is, pointing out to the district
court—that there is an absence of evidence to support the
nonmoving party's case."  Celotex, 477 U.S. at 325.[10]  Once the

---

[9]Disputes as to immaterial facts do "not preclude summary
judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d
1472, 1483 (9th Cir. 1986).

[10]When the moving party would bear the burden of proof at
trial, that party must satisfy its burden with respect to the
motion for summary judgment by coming forward with affirmative
evidence that would entitle it to a directed verdict if the
evidence were to go uncontroverted at trial.  See Miller, 454
F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden
Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the
nonmoving party would bear the burden of proof at trial, the
party moving for summary judgment may satisfy its burden with
respect to the motion for summary judgment by pointing out to the
court an absence of evidence from the nonmoving party. See id.
(citing Celotex, 477 U.S. at 325).

moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[11/] The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.

_____

[11/]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Johnson v. Wash. Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), cited in Villiarimo, 281 F.3d at 1061.

See T.W. Elec. Serv., 809 F.2d at 630-31.[12/]  Accordingly, if

"reasonable minds could differ as to the import of the evidence,"

summary judgment will be denied.  Anderson, 477 U.S. at 250-51.

## DISCUSSION

Plaintiff's Amended Complaint asserts employment

discrimination pursuant to Title VII (Count I), 42 U.S.C. § 1981

(Count II), 42 U.S.C. § 1983 (Count III), 42 U.S.C. § 1985 (Count

IV), and Hawaii Revised Statutes Chapter 378 (Count V).  Am.

Compl. ¶¶ 41-45.  The Amended Complaint asserts that Plaintiff

was terminated because of his race, faced a hostile work

environment, and did not receive a fair and unbiased hearing.[13/]

Id.  ¶¶ 8, 13, 16, 19, 35-36.  Plaintiff seeks reinstatement to

_____

[12/]At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.  See
Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026
(9th Cir. 1994).

[13/]The Amended Complaint makes the assertion that the DOE
terminated Plaintiff without due process; specifically, "[t]he
employer did not provide plaintiff with the opportunity to review
material derogatory to teacher's conduct and used such material
in a proceeding against plaintiff" and that the independent
Hearing Examiner in his grievance proceeding was biased.  Compl.
¶¶ 19, 35-36.  Plaintiff, however, has not asserted a cause of
action based on the Fourteenth Amendment Due Process Clause.  To
the extent this claim might be subsumed within other asserted
claims, Plaintiff has failed to set forth any specific facts
about his alleged lack of opportunity to review derogatory
materials.  He makes the conclusory allegation that his hearing
examiner was biased because she worked under Hamamoto, and that
per a Union contract, he is entitled to a neutral mediator.
Turner Declaration ¶ 19.  Plaintiff, however, has provided no
factual details to support this claim.  Thus, he has failed to
raise genuine dispute of material facts as to these issues.

15

his teacher position, back pay, elimination of the ineligible for

hire status from his employment file, financial compensation for

his pain, suffering, and wrongful loss of his career and

employment benefits, restoration of his employment benefits, and

"the hard to place school bonus of §7000."  Id. ¶ 47.

        The Court will first discuss whether Plaintiff's Title

VII claims are time-barred.  It will then discuss the Title VII

and § 1981 claims on the merits, which both require the

application of the same legal framework.  This will be followed

by a discussion of Plaintiff's § 1983, § 1985, and H.R.S. Chapter

378 claims, respectively.

## I.   Timely Filing of Title VII Claims

        "Title VII provides that upon dismissing a charge of

discrimination, the EEOC must notify the claimant and inform her

that she has ninety days to bring a civil action."  Payan v.

Aramark Mgmt. Servs. Ltd., 495 F.3d 1119, 1121 (9th Cir. 2007);

42 U.S.C. § 2000e-5 (f)(1).  "[T]his ninety-day period operates

as a limitations period.  If a litigant does not file suit within

ninety days [of] the date EEOC dismisses a claim, then the action

is time-barred."  Id. (alteration in original) (internal

quotations omitted).  The Ninth Circuit "measure[s] the start of

the limitations period from the date on which a right-to-sue

notice arrived at the claimant's address of record."  Id. at

1126.

Defendants assert that the EEOC mailed Plaintiff a right-to-sue letter on October 29, 2008. Defs.' Mot. Mem. 8. Defendants contend that a presumption of receipt should apply under the mailbox rule and thus Plaintiff's suit is time-barred because he did not timely file suit. Defs.' Mot. Mem. 7.

### A.   The Mailbox Rule

The mailbox rule is "a long-established principle which presumes that, upon a showing of predicate facts that a communication was sent, the communication reached its destination in regular time." Payan, 495 F.3d at 1123. Consequently, "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." Nunley v. City of Los Angeles, 52 F.3d 792, 796 (9th Cir. 1995).

In their CSF, Defendants state that "[o]n October 29, 2008, the Dismissal and Notice of Rights for that Charge was mailed to Mr. Turner."[14] Defs.' CSF ¶ 7. Plaintiff admits that this is true with the qualification that "these documents were not mailed via certified[] mail and there is no proof of their receipt, until Mr. Turner did so on 10/28/2010." Pl.'s CSF ¶ 7.[15] Plaintiff contends that "[a]s there was no certified proof

---

[14]The "right-to-sue letter" is formally captioned "Dismissal and Notice of Rights." See Defs.' Ex. 2.

[15]Pursuant to Local Rule 56.1(g), "material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party." Thus, Plaintiff has admitted that the right-to-

of mailing or deliver[y] to Mr. Turner, there is no presumption
of service in this case, as the court previously ruled."  Pl.'s
Opp'n 8.  Plaintiff further argues that new evidence submitted
by Defendants in the form of Turner's case log from the EEOC is
insufficient because it merely shows that the EEOC "office
routinely does things a certain[] way," but that "no one . . .
had any actual specific recollection of putting Mr. Turner's
right to sue letter in the mail."  Id.

First, "Placing letters in the mail may be proved by
circumstantial evidence, including customary mailing practices
used in the sender's business."  Custer v. Murphy Oil USA, Inc.,
503 F.3d 415, 420 (5th Cir. 2007); Lewis v. United States, 144
F.3d 1220, 1222-23 (9th Cir. 1998) (considering a sworn
statement of mailing and circumstantial evidence in applying the
mailbox rule).  Thus contrary to Plaintiff's assertion, a
certified mail receipt is not required.  In fact, the mailbox
rule was "developed precisely to aid finders of fact in
circumstances where direct evidence of either receipt or non-
receipt is . . . not available."  Schikore v. BankAmerica
Supplemental Ret. Plan, 269 F.3d 956, 961-63 (9th Cir. 2001)
("In the absence of the use of registered or certified mail, on
the one hand, and a returned envelope or other indication of
failed delivery, on the other, both receipt and non-receipt are

---

sue letter was mailed to him in October 2008.

18

difficult to prove conclusively.") (internal quotations omitted).

Second, Plaintiff misconstrues the Court's prior ruling.  The Court denied Defendants' Motion to Dismiss "[b]ecause there [was] a dispute about whether Turner received his right-to-sue letter and Defendants ha[d] not shown that his receipt of the letter should be presumed."  2011 WL 1637333, at *4.  The Court found that a statement in a letter from EEOC director Timothy Riera to Turner that the EEOC's records reflected that the right to sue letter was mailed on October 29, 2008, was insufficient to create a presumption of mailing.  Id. at *5.  The Court explained that it would not construe the statement against Turner in the context of a motion to dismiss, and in any event, it was inadmissible hearsay.  Id. at *5.

Defendants had also submitted a declaration from Susan Kitsu, Director of the DOE's Civil Rights Compliance Office, stating that, inter alia, EEOC provided the DOE a copy of the right-to-sue letter dated 10/29/08.  See id. at *5 n.6.  The Court concluded that it could not consider this evidence in the context of a motion to dismiss; the DOE's receipt of the letter did not show that the EEOC mailed the original to Turner; and the declaration did not state when the DOE received the letter. Id.  Consequently, the only evidence left was the date on the right-to-sue letter itself, which, standing alone, was

19

insufficient to invoke a presumption it was mailed.  Id. at *6.

Defendants have now submitted Turner's case log and a sworn statement by Riera that a case log "is maintained in the investigative files of the Honolulu Local Office by the office staff members in the ordinary course of business and [] reflects EEOC activity regarding the processing of a charge."  See Defs.' Mot. Declaration of Timothy A. Riera ("Riera Declaration") ¶¶ 4-6.  Turner's case log reflects that the right-to-sue letter was mailed to Turner and the DOE on October 29, 2008.[16]  See Defs.' Mot. Ex. 1.  Riera further declared that he signed the right-to-sue letter, which is dated October 29, 2008, and that it was not the EEOC's practice at the time Turner's charge was processed to send the right-to-sue letter via certified mail/return receipt.  Riera Declaration ¶¶ 6 & 7.

Defendants also submitted another Declaration from Kitsu.  Defs.' Mot. Declaration of Susan H. Kitsu ("Kitsu Declaration").  Kitsu declared, inter alia, that:

> The EEOC Dismissal and Notice of Rights dated October 29, 2008, notes that the 'Date Mailed' was on '10/29/08'; and further notes that I was copied on the letter.  On October 30, 2008, I received my copy of the EEOC Dismissal and Notice of Rights dated October

---

[16]/The case log states that on 10/29/08, action taken was "mail dismissal to CP/R."  Defs.' Mot. Ex. 1.  Riera declared that "the Dismissal and Notice of Rights for [Turner's] Charge was mailed to Charging Party ("CP"), Ricky Turner, and Respondent ("R") state of Hawaii, Department of Education, on October 29, 2008."  Riera Declaration ¶ 5.

29, 2008, as noted by the date/time stamp of
my office stating October 30, 2008.

Id. ¶ 4.

Defendants new evidence is sufficient to establish
that it mailed Turner the letter on October 29, 2008.  In <u>Nunley</u>
<u>v. City of Los Angeles</u>, 52 F.3d 792 (9th Cir. 1995), the Ninth
Circuit considered the mailbox rule in the context of an
addressee's motion for an extension of time to file an appeal
made under Federal Rule of Appellate Procedure 4(a)(6).  The
Ninth Circuit concluded that a district judge could properly
find the presumption of mailing was "raised by the docket and
the stamp on the order, which showed that notice was sent to [a
party's] counsel."  <u>Id.</u> at 796 n.5.  In <u>United States v.</u>
<u>Putnam</u>, No. 89-10400, 1990 WL 102782 (9th Cir. July 24, 1990),
the Ninth Circuit concluded that a presumption that the Division
of Motor Vehicles ("DMV") had mailed a copy of an order to
Putnam "was appropriate given that the order was an official
record customarily mailed in the ordinary course of the DMV's
business."  <u>Id.</u> at *2.

Here, Defendants submitted physical evidence in the
form of documentation on a case log that evidences the right-to-
sue letter was mailed to Turner.  The notation on the case log
that the letter was mailed to Turner and the DOE on October 29,
2008, is corroborated through Kitsu's declaration that the DOE
received a copy of the right-to-sue letter dated October 29,

21

2008, on October 30, 2008.  Kitsu Declaration ¶ 4.  The date on
the letter itself, October 29, 2008, although alone is not
sufficient to invoke the mailbox rule presumption, is consistent
with, and lends support to, Defendants' other evidence.  The
Court concludes that this circumstantial evidence is sufficient
to raise a presumption that Plaintiff received the letter in
regular time.

　　　This presumption may be rebutted with sufficient
evidence to the contrary.  See Schikore, 269 F.3d at 961.  In
Putnam, the Ninth Circuit concluded that the defendant did not
rebut the presumption of receipt when he "did not contest that
the order was mailed to him, nor . . . expressly deny having
received it."  1990 WL 102782, at *3.  The Ninth Circuit
concluded that the defendant's sole argument "that the
government has failed to prove that he received it" was
insufficient.  Id.  Similarly, Plaintiff does not deny that the
EEOC mailed a copy of the letter, nor does he expressly deny
having received it.  His sole argument is that the letter was
"not mailed via certified[] mail and there is no proof of [its]
receipt, until Mr. Turner did so on 10/28/2010."  See Pl.'s CSF
¶ 7.  Accordingly, Plaintiff has failed to rebut the presumption
of receipt.[17]  See Schikore, 269 F.3d at 964 n. 7 (determining

---

[17]The Court notes that had Plaintiff made a specific factual
denial of receipt, it would need to determine if the denial alone
could rebut the presumption of receipt.  See Schikore, 269 F.3d

22

that even if a factual denial of receipt could rebut the presumption of mailing, "BankAmerica's simple statement that Schikore's form is not presently contained in its files is insufficient to constitute a 'specific factual denial of receipt'").

The Ninth Circuit has adopted a three-day presumption of receipt from the time of mailing, and thus Plaintiff is deemed to have received his letter on November 1, 2008. <u>See</u> <u>Payan</u>, 495 F.3d at 1125. Consequently, Plaintiff did not file suit within 90 days of receiving his right-to-sue letter; unless equitable tolling applies, Plaintiff's Title VII claims are untimely.

**B. Equitable Tolling**

In its previous Order, the Court explained:

> If Defendants manage to show that Turner's receipt of the letter in 2008 should be presumed, Turner will have to satisfy a high burden to demonstrate that the ninety-day deadline should be equitably tolled. "Equitable tolling is . . . to be applied only sparingly, and courts have been generally unforgiving . . . when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights."

2011 WL 1637333, at *6 n.8 (quoting <u>Nelmida v. Shelly Eurocars,</u>

---

at 964 n. 7 (noting that "we are not certain that <u>Nunley's</u> approach" of allowing a "specific factual denial of receipt" to rebut the presumption of receipt "would apply outside the Rule(a)(4)(6) context").

<u>Inc.</u>, 112 F.3d 380, 384 (9th Cir. 1997)).

Turner's only arguments are that Defendants did not prove he received his right-to-sue letter and the EEOC did not mail it via certified mail.  These arguments are not valid based on the foregoing analysis and the Court concludes there is no other basis in the record for equitable tolling.[18]

Even if Turner had timely filed suit, or there was a basis for equitable tolling, Defendants are entitled to summary judgment on the merits of Plaintiff's Title VII claims.

## II.  Turner's Title VII and 42 U.S.C. § 1981 Claims

Title VII makes it illegal for an employer to discharge or otherwise discriminate against an employee "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Section 1 of the Civil Rights Act of 1866 is enacted by 42 U.S.C. § 1981(a), which states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

---

[18] In its prior Order, the Court noted that Turner claims he spent two years trying to find an attorney after an EEOC investigator informed him that the EEOC would not pursue the matter.  Turner has not raised that argument again.  In any event, "if Turner received his right-to-sue letter, he should have timely filed this action, with or without an attorney. Turner's filing of this action in 2010 seems to demonstrate his ability to have filed it in 2008; the record reveals no extraordinary difficulty that Turner had in 2008 but no longer had in 2010."  2011 WL 1637333, at *6 n.8.

> of persons and property as is enjoyed by
> white citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and
> to no other.

Courts have recognized a private cause of action for employment discrimination under § 1981 and have applied the same substantive standards as for Title VII.  See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 n. 5 (9th Cir. 2006) ("The McDonnell Douglas framework is also applicable to employment discrimination claims under 42 U.S.C. § 1981.").

### A. Title VII Claims Against Hamamoto, Correa, Beck, and Mestuzzi

Defendants assert that summary judgment should be granted as to the claims against Hamamoto, Correa, Beck, and Mestuzzi (collectively, "individual defendants") as to Plaintiff's Title VII claim because individuals may not sued under Title VII.  Defs.' Mot. Mem. 22.  Plaintiff only asserts a cause of action based on Title VII against the DOE.  Am. Compl. ¶ 41.  To the extent Defendant is asserting a Title VII claim against the individual defendants, Defendants are correct that Title VII does not impose liability on individual employees, including managers and supervisors.  See 42 U.S.C. § 2000e-2; Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998).  Accordingly, individuals may not be sued under Title VII in their individual capacities.  Summary judgment in favor of the individual defendants is therefore appropriate with

25

respect to the Title VII claims.[19/]

### B.   Hostile Work Environment Claim Under Title VII Against the DOE

To establish a federal district court's subject matter jurisdiction over a Title VII claim, a plaintiff must exhaust administrative remedies by filing a timely charge with the EEOC or the appropriate state agency.  See 42 U.S.C. § 2000e-5(f); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  This administrative charge requirement serves the purposes of "giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." Freeman, 291 F.3d at 636 (internal quotation omitted).

A federal district court has subject matter jurisdiction over claims of discrimination that were not included in a plaintiff's EEOC charge only where those new claims are "like or reasonably related to" the allegations contained in the EEOC charge or where they are "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of" the EEOC

---

[19/]To the extent Hamamoto is sued in her "official capacity," she is sued as an agent of the DOE.  See Miljkovic v. Univ. Of Hawaii, President's Office, Civ. No. 09-00064 ACK-KSC, 2011 WL 237028, *6 n.12 (D. Haw. Jan. 21, 2011).  Because the DOE is also a defendant in this case, Hamamoto is an "improper target" for Plaintiff's Title VII claims.  Id.; see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-Capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations omitted).

charge.  Id. (internal quotation omitted).  The EEOC charge should be construed with the utmost liberality.  See id.  In determining whether the exhaustion requirement has been satisfied, a court may consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, and any locations at which discrimination is alleged to have occurred.  See id.  "The crucial element of a charge of discrimination is the factual statement contained therein."  Id. (internal quotations omitted).

Plaintiff asserts that he was subject to an "unequal and unfair working environment."  Am. Compl. ¶ 8.  He supports this claim with the assertion that Principal Beck did not provide him with assistance with regard to "classroom curriculum, teacher's assistant, supplies and materials, support in receiving grants, classroom evaluations, and support in regards to classroom budget."  Id.  He also states that he was subject to discriminatory treatment when he received a budget of $732 for expenses while other special education teachers received $950 for their budget.  Id. ¶ 14.

Defendants assert that Plaintiff's EEOC complaint "was based completely upon the facts related to his discharge, i.e., the field trip incident with Student K.K.," and thus the Court should only consider the incident with K.K. in evaluating

27

Plaintiff's discrimination claim.  Defs.' Mot. Mem. 8-9.
Plaintiff responds that he "complained of discriminatory
wrongful termination in his EEOC complaint, the fact that he was
subjected to a 'hostile work environment' is clearly related to
and relevant to proving that his termination was a
discriminatory act."  Pl.'s Opp'n 8-9.

      "The rule of liberal construction does not suggest
that a plaintiff sufficiently exhausts his administrative
remedies under Title VII by merely mentioning the word
'discrimination' in his or her EEOC administrative charge.
Freeman, 291 F.3d at 637.  The factual allegations in
Plaintiff's EEOC complaint relate exclusively to K.K.'s
decertification "from the Special Education Program," the field
trip incident, the official investigation of such incident, and
his termination.  See Defs.' Mot. Ex. A, at 2.  Moreover, in the
charge, the "date(s) discrimination took place" is listed as
July 26, 2007, under both the "earliest" and "latest" column,
and the "continuing violation" box thereunder is not checked.
Id. at 1.  The factual allegation states that "[o]n or about
July 26, 2007, Respondent discharged me from my position."  Id.

      Plaintiff's allegations are based on discrete acts
that do not suggest a claim for any actions involving Plaintiff
prior to the field trip or that he was subject to a hostile work
environment.  Consequently, Plaintiff has not exhausted his

claims with regard to a hostile working environment.  See
Swinnie v. Geren, 379 Fed. App'x 665, 667 (9th Cir. 2010)
(holding dismissal of hostile work environment claim was proper
where plaintiff's EEOC complaint alleged discrete acts of
discrimination that "would not have put the EEO investigator on
notice of a pattern of conduct sufficiently severe or pervasive
so as to create an abusive work environment") (internal
quotations omitted); Dorsey v. Pinnacle Automation Co., 278 F.3d
830, 838 (8th Cir. 2002) (holding employees failure to promote
claim presented in their EEOC charge was not broad enough to
encompass hostile work environment claims because the decision
not to promote "was a discrete event completed at the time of
the promotions"); Aramburu v. Boeing Co., 112 F.3d 1398, 1409-10
(10th Cir. 1997) (rejecting the argument that plaintiff's
"hostile environment claim is reasonably related to his wrongful
discharge claim simply because all of [employer's] conduct is
related").

Consequently, the Court lacks jurisdiction over
Plaintiff's hostile work environment claim brought pursuant to
Title VII.

**C.   Hostile Work Environment Claims Under 42 U.S.C. § 1981
Against All Defendants**

Although the same legal principles apply to a
disparate treatment claim under Title VII and 42 U.S.C. § 1981,

29

a plaintiff is not required to exhaust administrative remedies
before bringing a § 1981 claim.[20/]  Surrell v. Cal. Water Serv.
Co., 518 F.3d 1097, 1104 (9th Cir. 2008).  Additionally,
"[w]hile not liable under Title VII, 'individuals may be held
liable under §§ 1981 and 1983 for certain types of
discriminatory acts, including those giving rise to a hostile
work environment.'"  Lum v. Kauai Cnty. Council, Civ. No.
06-00068 SOM-LEK, 2007 WL 3408003, at *16 (D. Haw. Nov. 9, 2007)
(quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d

_____

[20/]Defendants' supplemental memorandum asserts that
Plaintiff's §§ 1981, 1983, and 1985 claims are barred by a two-
year statute of limitations set forth in Hawaii Revised Statutes.
See Defs.' Supp. Mem. 4.  Although the forum state's statute of
limitations for personal injury actions applies to civil rights
statutes enacted before December 1, 1990, a four-year statute of
limitations applies to actions arising from statutes enacted
thereafter.  See 28 U.S.C. § 1658; Cholla Ready Mix, Inc. v.
Civish, 382 F.3d 969, 974 n. 5 (9th Cir. 2004).  An Amendment to
§ 1981 in 1991 put Plaintiff's claims under that section in a
different time frame than his §§ 1983 and 1985 claims.  The Civil
Rights Act of 1991 overturned a prior case that held a party
could not recover under § 1981 for racial harassment relating to
the conditions of employment by "defining the key 'make and
enforce contracts' language in § 1981 to include the 'termination
of contracts, and the enjoyment of all benefits, privileges,
terms and conditions of the contractual relationship.'"  Jones v.
R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004) (quoting 42
U.S.C. § 1981(b)).  Plaintiff's hostile work environment and
wrongful termination claims "'ar[ise] under' the 1991 Act in the
sense that [his] causes of action were made possible by that
Act."  Id.  Consequently, the four-year period applies "to [his]
hostile work environment and wrongful termination claims under
§ 1981."  Cholla Ready Mix, Inc., 382 F.3d at 974 n.5.
Plaintiff's claims based on his termination in January 2008 and
hostile working environment from November 29, 2006 forward, which
were filed in this Court on November 29, 2010 are therefore
timely.

30

Cir. 2004)).  Plaintiff has nonetheless failed to establish a dispute as to any material facts to support a hostile work environment claim.

To establish a hostile work environment based on racial discrimination, Plaintiff must show that: "(1) the defendants subjected [him] to verbal or physical conduct based on [his] race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  Id.  "To resolve such a claim, courts consider all the circumstances, including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance." Id.

Plaintiff has presented no evidence that he was subject to "verbal or physical conduct of a harassing nature." Moreover, there is no evidence that any potential harassment was based on race or "so severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment."  Accordingly, summary judgment is proper for Defendants on Plaintiff's hostile work environment claim brought under § 1981.

**D.  Racial Discrimination Claims Against the DOE Under Title VII and Against All Defendants Under § 1981**

"A person suffers disparate treatment in his [or her]

31

employment when he or she is singled out and treated less
favorably than others similarly situated on account of race."
Cornwell, 439 F.3d at 1028 (internal quotations omitted).  To
prevail in a disparate treatment claim, a plaintiff must "prove
that the employer acted with conscious intent to discriminate."
Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002).
Specifically, Plaintiff must establish that: (1) he belongs to a
protected class; (2) he was qualified for the position; (3) he
was subject to an adverse employment action; and (4) similarly
situated individuals outside his protected class were treated
more favorably.  Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225
F.3d 1115, 1123 (9th Cir. 2000).  "The burden of establishing a
prima facie case of disparate treatment is not onerous."  Tex.
Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)

     By establishing a prima facie case, the plaintiff
creates a presumption of discrimination.  Then, under the burden
shifting framework set forth in McDonnell Douglas Corp. v.
Green, 411 U.S. 248 (1981), the burden of production shifts to
the defendant to rebut the claim by articulating a legitimate,
nondiscriminatory reason for its conduct.  Cornwell, 439 F.3d at
1028.  If the defendant produces a nondiscriminatory
explanation, then the presumption of discrimination is dropped
and the plaintiff must satisfy the original burden of
persuasion.  Costa, 299 F.3d at 855; Burdine, 450 U.S. at 255.

The plaintiff can then satisfy the burden of persuasion in two ways.  Cornwell, 439 F.3d at 1028; Burdine, 450 U.S. at 265.  The plaintiff may make the same showing that he could have made originally, in the absence of the McDonnell Douglas burden shifting, by offering direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer" to engage in disparate treatment.  Cornwell, 439 F.3d at 1028.  Or, the plaintiff can offer evidence that the "employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256.

Defendants assert that Plaintiff has failed to establish a prima facie case for racial discrimination and therefore his Title VII and Section 1981 claims fail.  Defs.' Mot. Mem. 10-11.  Specifically, Defendants assert that Plaintiff has not produced evidence that he was similarly situated to teachers treated more favorably.  Id.  Defendants further contend that even if Plaintiff could make out a prima facie case, Defendants have offered a legitimate, nondiscriminatory reason for the discharge, namely, "seriously compromis[ing] the safety of Student KK" with his actions, and Plaintiff has failed to show this explanation was a pretext for discrimination.  Id. at 15-16.

Plaintiff responds that evidence that Beck has not fired anyone besides Plaintiff, and Correa has never recommended

33

another teacher for termination, supports a prima case for racial discrimination.  Pl.'s Opp'n 9.  He asserts that in the seven cases of major discipline that Correa was involved in, Plaintiff was the only person terminated for one act.  Id.  He states that "[o]ne male was apparently let go due to attendance and health reasons, with the proviso, that with medical clearance he was eligible for re-hire."  Id. at 10.  He states that two other teachers received bad evaluations for a period of time and three others were terminated for not reporting to work for an extended period of time.  Id.  He also produced evidence that Beck recommended a teacher for discipline who had used "verbal, derogatory words" with a student and that the teacher ceased to be at Kaʻu but obtained a teaching position at another school.  Id.; Doc. No. 82, Ex. 2, at 32:20-34:11 (Deposition of Sharon Beck).  He further asserts that the Court need only "contrast the non-discipline of Defendant Cari Mestuzzi, who set Plaintiff up with a 504 student with a history of running away and cutting class, and did not inform Plaintiff Turner of student K.K.'s history, and reneged on a promise to accompany the class to watch K.K. with the gross termination of Plaintiff Turner for a first infraction."  Pl.'s Opp'n 9.

     The Court agrees with Defendants that Plaintiff has failed to produce evidence of any similarly situated employees. "[I]ndividuals are similarly situated when they have similar

34

jobs and display similar conduct." <u>Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003).  Although Plaintiff need not show that other employees were identical to him, he must show that they were "similar in material respects." <u>Earl v. Nielson Media Research, Inc.</u>, 658 F.3d 1108, 1114 (9th Cir. 2011).  Materiality depends on the facts and circumstances of the case.  <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1157 (9th Cir. 2010).  The Ninth Circuit has noted that "it is important not to lose sight of the common-sense aspect of the similarly situated inquiry." <u>Earl</u>, 658 F.3d at 1114 (internal quotations omitted).  The Ninth Circuit has concluded that an employee was not similarly situated to the plaintiff when the employee "did not engage in problematic conduct of comparable seriousness" to the plaintiff.  <u>See</u> <u>Vasquez</u>, 349 F.3d at 641.

On the facts of this case, Plaintiff has failed to show that there were any similarly situated employees, <u>i.e.</u>, employees who seriously compromised the safety of a student in their care.[21/]  First, the fact that Beck and Correa have not recommended the termination of other teachers does not establish that any other teachers engaged in wrongful conduct, much less conduct that endangered a student.  Second, the conduct of the teacher that was subject to discipline but able to obtain a job

---

[21/]The Court assumes for the sake of analysis that the teachers Plaintiff refers to in his opposition are outside of his protected class.

at another school is not "similar in material respects" to Plaintiff's conduct.  Using "verbal, derogatory words" around a student is not of the same type or as severe an offense as leaving a student at a park and failing to immediately report her missing.  Finally, Mestuzzi was not similarly situated to Plaintiff with respect to the incident in question.  Even crediting Plaintiff's argument that Mestuzzi should have told Turner of K.K.'s history, such inaction would not result in seriously compromising the safety of K.K. in a materially similar way as Turner's failure to immediately report her missing.  Accordingly, Plaintiff has failed to set forth a prima facie case of discrimination.

Moreover, even if Plaintiff had shown a prima facie case of discrimination, he has not created a genuine dispute of material fact regarding whether defendants' non-discriminatory reason for Plaintiff's termination is pretextual.  Plaintiff has not presented direct evidence of discrimination, "such as comments from supervisors betraying bias or animus."  See Earl, 658 F.3d at 1113.  Thus he must establish pretext with circumstantial evidence, which requires producing "specific and substantial facts to create a triable issue of pretext."  Id. (internal quotations omitted).

The defendants' letters regarding Plaintiff's termination clearly set forth the reason for Plaintiff's

discharge.  Defs.' Mot. Ex. E, at 12-13, 25-32.  Plaintiff does not dispute that he left K.K. on the field trip and failed to immediately report her missing.  In the letter of termination, Correa explained that his justification, i.e., that he thought K.K. was 18 and wanted to respect her adult decision, was without merit.  See Defs.' Mot. Ex. E, at 29.  Plaintiff nonetheless asserts that his discharge was unfair and that others were responsible for K.K. running away; specifically, the school for decertifying K.K. and Mestuzzi for not informing him that K.K. had a history of behavioral problems.  He also argues that one of the reasons given for termination, that he improperly allowed K.K. to go on the field trip, is false because he had administrative approval for the trip.  Turner Declaration ¶ 15.

There is simply nothing in the record to suggest that Plaintiff's termination had anything to do with his race.  His attempt to blame others for the field trip incident does not nullify his own actions.  The record makes clear that Plaintiff was terminated due to his actions after K.K. went missing, there is no indication that Plaintiff was fired because the DOE thought it was improper to allow K.K. to attend the trip.  Plaintiff's conclusory assertion that his discharge was unfair and unwarranted, without specific and substantial facts to support his claims, is insufficient to survive summary judgment.

37

See Cornwell, 439 F.3d at 1028 n.6 ("A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action.  Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted.") (internal citation omitted).

        In sum, the individual defendants cannot be held liable under Title VII; Plaintiff has failed to establish a genuine dispute of fact as to his claims against the DOE under Title VII; and Plaintiff has failed to establish a genuine dispute of fact as to his claims against Defendants under § 1981.

## IV.  Turner's Claims Under Title VI and 42 U.S.C. § 1983

        In his Amended Complaint, Turner states "[t]he individual Defendants, each of these conspired under Color of State Law to violate Plaintiff Turner's constitutional right to non discrimination in public employment which is federally funded in violation of Title VI and 42 U.S.C. § 1983."[22/]  Am.

_____

        [22/]Because Plaintiff states in his opposition that Hamamoto is sued in her official capacity, the Court construes this claim as asserted against only Correa, Beck, and Mestuzzi.  See Pl.'s Opp'n 11-12.  In any event, it is well settled that claims under § 1983 are limited by the scope of the Eleventh Amendment.  In Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court held that "States or governmental entities that are

Compl. ¶ 43.

A.   **Title VI Claims**

42 U.S.C. § 2000d (Title VI) provides:

No person in the United States shall, on the
ground of race, color, or national origin,
be excluded from participation in, be denied
the benefits of, or be subjected to
discrimination under any program or activity
receiving Federal financial assistance.

42 U.S.C. § 2000d-3, however, limits the conduct

prohibited by 42 U.S.C. § 2000d:

Nothing contained in this subchapter shall
be construed to authorize action under this
subchapter by any department or agency with
respect to any employment practice of any
employer, employment agency, or labor
organization except where a primary
objective of the Federal financial
assistance is to provide employment.

Consequently, "a plaintiff must allege and prove that

the defendant received federal financial assistance, the primary

objective of which was to provide employment, and that the funds

_____

considered 'arms of the State' for Eleventh Amendment purposes"
are not "persons" under § 1983.  Id. at 70-71.  The Court further
held that a suit against a state official in her official
capacity for retrospective or compensatory relief is no different
from a suit against the state itself; thus, state officials sued
in their official capacities for these remedies are not "persons"
within the meaning of § 1983 either.  See id. at 71 & n.10.  To
the extent Plaintiff is asserting a § 1983 claim against Hamamoto
in her official capacity for prospective relief, e.g., his
request to be reinstated to his teaching position, it fails on
the merits as discussed below.  See Doe v. Lawrence Livermore
Nat'l Lab., 131 F.3d 836, 842 (9th Cir. 1997) (holding § 1983
claim against state officer in official capacity suit could be
brought for job reinstatement).

39

went to discriminatory programs or activities." <u>Gao v. Haw.</u>
<u>Dep't of Atty. Gen.</u>, Civ. No. 09-00478 DAE-BMK, 2010 WL 99355,
at *5 (D. Haw. Jan. 12, 2010) (citing <u>Temengil v. Trust</u>
<u>Territory of Pac. Islands</u>, 881 F.2d 647, 653 (9th Cir. 1989)
(plaintiffs failed to establish that providing employment was
primary purpose of program)).  Plaintiff has not alleged, much
less proved, that the primary purpose of federal funds provided
to the DOE was to provide employment.  Moreover, to prevail on a
Title VI claim, Plaintiff must show that Defendants
intentionally discriminated against him.  <u>Dowkin v. Honlulu</u>
<u>Police Dep't</u>, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *6-
7 (D. Haw. Nov. 30, 2010).  Plaintiff has failed to make such a
showing.

> Accordingly, summary judgment is proper on Plaintiff's
claims under Title VI.

### B.  Section 1983 Claims

42 U.S.C. § 1983 provides, in part, that:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the
> United States . . . to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress.

> To state a cause of action under § 1983, a plaintiff
must show (1) that a person acting under color of state law

engaged in the conduct at issue, and (2) that the conduct
deprived the claimant of some right, privilege, or immunity
protected by the Constitution or laws of the United States.  See
Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  "A person
deprives another of a constitutional right, within the meaning
of § 1983, if he does an affirmative act, participates in
another's affirmative acts, or omits to perform an act which he
is legally required to do that causes the deprivation of which
[the plaintiff complains]."  Id. at 633 (alteration in original)
(internal quotations omitted).

        Plaintiff bases his § 1983 claims on his
"constitutional right to non discrimination in public
employment."  Am. Compl. ¶ 43.  To the extent Plaintiff basis
his § 1983 claim on a deprivation of his equal protection
rights, he has failed to demonstrate that he was treated less
favorably than similarly situated persons.  To the extent the
claim is based on a violation of Title VII, as discussed above,
his claim fails.[23]

---

        [23]Alternatively, Plaintiff's §§ 1983 and 1985 claims are
untimely.  Under 42 U.S.C. §§ 1983 and 1985, the forum state's
statute of limitations for personal injury actions applies.  See
Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1048
(9th Cir. 2008).  The Hawaii statute of limitations for personal-
injury actions is two years.  H.R.S. § 657-7; see Linville v.
Hawaii, 874 F. Supp. 1095, 1104 (D. Haw. 1994).  Defendants
assert that Plaintiff's §§ 1983 and 1985 claims are barred by the
statute of limitations because Plaintiff was terminated in
January 2008, and did not file this action until November 29,
2010.  Defs.' Supp. Mem. 3.

## V.   Turner's Claims Under 42 U.S.C. § 1985

Plaintiff asserts that "the individual Defendants
. . . conspired under color of State law to violate Plaintiff
Turner's constitutional rights under 42 U.S.C. [§] 1985." Am.
Compl. ¶ 44. Subsection (3) of 42 U.S.C. § 1985 — which
provides that where two or more persons conspire to deny any
person equal protection, the injured party may have an action
for damages — is the only subsection possibly applicable to
Plaintiff's § 1985 claim. This subsection "has been construed
to require a racially or otherwise invidiously discriminatory
animus behind the conspirator's action." Aldabe v. Aldabe, 616

---

Plaintiff argues that the statute of limitations should be tolled
for the period of the EEOC proceeding. Title VII administrative
remedy, however, does not toll the statute of limitations for
other independent claims "'even though the claims are based on
the same facts and directed toward the same ends.'" Lesane v.
Hawaiian Airlines , 75 F. Supp. 2d 1113, 1125 (D. Haw. 1999)
(quoting Johnson v. Ry. Express Agency, Inc., 421 U.S. 454,
467(1975)); see Linville, 874 F. Supp. at 1095 (concluding that
the plaintiff's § 1983, Title IX, and state law claims were
separate from her Title VII claims and thus not tolled by filing
claims with the EEOC); cf. Salgado v. Atl. Richfield Co., 823
F.2d 1322, 1325 (9th Cir. 1987) (holding that the plaintiff's
California Fair Employment and Housing Act ("FEHA") claim was
tolled during the pendency of an EEOC investigation because the
procedures and remedies of Title VII and the FEHA were wholly
integrated and related and the state agency deferred its
investigation to the EEOC). Plaintiff's §§ 1983 and 1985 claims
are separate, distinct, and independent from his Title VII
claims; Title VII administrative proceedings are not a
prerequisite to filing these claims in federal court and the
procedures and remedies of these claims are not wholly integrated
with those of Title VII. In any event, as previously determined,
Plaintiff received his right-to-sue letter on November 1, 2008,
and thus his claims filed on November 29, 2010, are barred by the
two-year statute of limitations.

42

F.2d 1089, 1092 (9th Cir. 1980) (internal quotations omitted).

To succeed a claim under this subsection, Plaintiff must allege

and prove the existence of a conspiracy.  <u>Sever v. Alaska Pulp</u>

<u>Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992).  Additionally,

before a plaintiff has a viable claim for conspiracy under

§ 1985, a plaintiff must first have a cognizable claim under

§ 1983.  <u>Olsen v. Idaho State Bd. of Med.</u>, 363 F.3d 916, 930

(9th Cir. 2004).

First, as discussed above, Plaintiff has failed to

show Defendants invidiously discriminated against him.  Second,

Plaintiff has not set forth any facts to show an agreement

between the Defendants to discriminate against him.  <u>See</u> <u>id.</u>

at 929-30 (determining dismissal of § 1985 appropriate where the

plaintiff's complaint was "devoid of any discussion of an

agreement amongst the appellees to violate her constitutional

rights").  Third, as previously discussed, Plaintiff's § 1983

claim cannot survive summary judgment.

Consequently, summary judgment in favor of Defendants

on Plaintiff's § 1985 claim is warranted.

## VI.  Turner's Claims Under H.R.S. § 378

### A.  Chapter 378 Claim Against the DOE and Hamamoto in Her Official Capacity

The Eleventh Amendment prohibits suits against state

agencies "regardless of the nature of the relief sought."

<u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  Eleventh Amendment Immunity applies to claims brought against a state in federal court unless the state consents or Congress unequivocally abrogates the immunity under its Fourteenth Amendment authority.  <u>Id.</u> at 99.  For Eleventh Amendment purposes, a suit against a state official in her official capacity is no different from a suit against the state itself.  <u>Will</u>, 491 U.S. at 71.  Hawaii has not consented to suit in federal court for Chapter 378 claims, and thus sovereign immunity bars Plaintiff's § 378-2 claims against the DOE and Hamamoto in her official capacity.  <u>See</u> <u>Lawrence v. Haw. Air Nat'l Guard</u>, 126 Fed. App'x 835, 837 (9th Cir. 2005); <u>Stucky v. Hawaii</u>, Civ. No. 06-00594 JMS-KSC, 2011 WL 214944, at *11 (D. Haw. Jan. 25 2008).

   **B.    Chapter 378 Claim Against Individual Defendants**

      **1.    Individual Liability Under § 378-2**

      Defendants contend that there is no individual liability for actions under § 378-2.  Defs.' Opp'n 18.  Plaintiff has not responded to this argument.  Section 378-2 prohibits discrimination as follows:

> (1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:
>
> (A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate

44

against any individual in compensation or in
the terms, conditions, or privileges of
employment;

. . .

(2) For any employer, labor organization, or
employment agency to discharge, expel, or
otherwise discriminate against any
individual because the individual has
opposed any practice forbidden by this part
or has filed a complaint, testified, or
assisted in any proceeding respecting the
discriminatory practices prohibited under
this part;

(3) For any person whether an employer,
employee, or not, to aid, abet, incite,
compel, or coerce the doing of any of the
discriminatory practices forbidden by this
part, or attempt to do so.

H.R.S. § 378-1 defines "Employer" as "any person, including the

State or any of its political subdivisions and any agent of such

person, having one or more employees, but shall not include the

United States."  Whether an individual may be directly liable

for conduct prohibited by Sections 378-2(1) and 378-2(2) depends

on the interpretation of the word "employer."

There is no decision by the Hawaii Supreme Court

directly on point, and there has been a split among the District

of Hawaii judges as to whether an individual can be liable as an

agent of an employer under these two provisions.  See Hale v.

Hawaii Publ'ns, Inc., 468 F. Supp. 2d 1210, 1227 (D. Haw. 2006)

(discussing the split).  This Court has ruled that an individual

without employees may be liable for discriminatory conduct

45

pursuant to H.R.S. §§ 378-2(1) and (2).  See id.  Subsequent to this ruling, the Ninth Circuit, in an unpublished decision, stated "there is no individual liability under Hawaii Revised Statutes § 378-2(1)(A) and (2).  We agree with the district court's analysis of the Hawaii statute's language, particularly in light of its parallels to Title VII."  Lum v. Kauai Cnty. Council, 358 Fed. App'x 860, 862 (9th Cir. 2009), cert. denied, 131 S.Ct. 200 (2010).  As an unpublished decision, Lum is persuasive authority but not binding precedent.  See Ninth Cir. Rule 36-3.

Because the individual Defendants are entitled to qualified immunity and Plaintiff cannot make out a claim under §§ 378-2(1) or 378-2(2) on the merits, the Court declines to revisit its prior ruling at this time.  Although individual liability is clearly proper under § 378-2(3), Plaintiff has failed to set forth facts supporting a claim thereunder.  See Lum, 358 Fed. App'x at 862.

### 2.  Qualified Immunity

Defendants assert that the individual Defendants are entitled to qualified immunity with respect to Plaintiff's individual capacity state-law claims.  Defs.' Mot. Mem. 18. Under Hawaii law, a nonjudicial governmental official performing a public duty enjoys the protection of what has been termed a qualified or conditional privilege.  See Towse v. Hawaii, 647

46

P.2d 696, 702 (1982).  This privilege shields the official from

liability for tortious actions unless the injured party shows

that the actions were motivated by malice, and not by an

otherwise proper purpose.  <u>Id.</u>  Summary judgment is only proper

on qualified immunity grounds when malice has been removed from

the case because the existence of malice is generally a jury

question.  <u>Id.</u>

Plaintiff asserts that he was unfairly terminated, and

as discussed previously, he has not shown that he was subject to

any invidious discrimination.  Therefore, Plaintiff has not

raised a genuine factual dispute as to malice.  <u>See</u> <u>McNally v.</u>

<u>Univ. of Haw.</u>, 780 F. Supp. 2d 1037, 1060 (D. Haw. 2011)

(concluding Defendants were entitled to qualified immunity on

Plaintiff's state-law claims, including Section 378-2, because

Plaintiff failed to sufficiently allege or raise any issue of

fact as to malice).

### 3.    The Merits

Moreover, Plaintiff's § 378-2 claims fail on the

merits.[24/]  H.R.S. § 378-2 prohibits racial discrimination in the

---

[24/]A two-year statute of limitations applies to personal
injury claims brought under H.R.S. § 378-2.  <u>See</u> H.R.S. § 657-2;
<u>see</u> <u>Lesane v. Hawaiian Airlines</u>, 75 F. Supp. 2d 1113, 1120 (D.
Haw. 1999).  As discussed above, Plaintiff's claims were not
filed within two years of his termination.  As with Plaintiff's
§§ 1983 and 1985 claims, even if equitable tolling would apply to
toll the limitations period during the pendency of Plaintiff's
EEOC proceedings, Plaintiff's claims were not filed within two-
years of receiving his right-to-sue letter.  Thus, Plaintiff's

workplace.[25/]   Plaintiff's state law claims are based on the same facts as his Title VII claims and the Hawaii Supreme Court has applied the same McDonnell Douglas burden-shifting analysis to racial discrimination claims asserted under § 378-2(1).   See Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 69-70 (Haw. 2001); Furukawa v. Honolulu Zoological Soc., 936 P.2d 643, 648-50 (Haw. 1997).   As discussed supra, Plaintiff's claims fail under this framework.

Section 378-2(3) allows claims against individuals who "aid, incite, compel, or coerce" discrimination.   Plaintiff, however, has failed to describe how the individual defendants aided, abetted, incited, compelled, or coerced discrimination. Plaintiff has only alleged that multiple persons were involved in his allegedly discriminatory termination.   Plaintiff has not shown any communication by the individual defendants that led anyone else to discriminate against him.   Even assuming the individual defendants made the decision to terminate Plaintiff based on his race, they "cannot be liable for aiding and

claims based on § 378-2 are also barred by the statute of limitations.

[25/]Plaintiff states that his claim is brought under Chapter 378 but does not cite a specific section.   His Amended Complaint asserts that "Defendant's conduct . . . also violated Plaintiff's right to be free from discriminatory treatment in violation of Section 378 of the Hawaii Revised Statutes."   Am. Compl. ¶ 45. Sections 378-2(1) and 378-2(3) are the only sections in that chapter potentially applicable here, and thus the Court will construe his claim as arising under these sections.

abetting [themselves]." <u>Nowick v. Gammell</u>, 351 F. Supp. 2d 1025, 1035 (D. Haw. 2004) (alteration in original) (internal quotations omitted).  Consequently, Plaintiff has failed to set forth facts suggesting a violation of § 378-2(3).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 29, 2012.



Alan C. Kay
Sr. United States District Judge

<u>Ricky Turner v. Department of Education, State of Hawaii, et al.</u>, Civ. No. 10-00707 ACK-BMK: Order Granting Defendants' Motion for Summary Judgment